**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SALAMA MADOFFE,**

        **Plaintiff,**               **Case No. 2:06-cv-771**
                                        **JUDGE GREGORY L. FROST**
      **v.**                      **Magistrate Judge Mark R. Abel**

**SAFELITE SOLUTIONS, LLC,**

        **Defendant.**

<u>**OPINION AND ORDER**</u>

Plaintiff brings this action against her former employer under the Family and Medical

Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") and under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978, 42

U.S.C. § 2000e(k) ("PDA").  This matter is before the Court for consideration of Defendant's

Motion for Summary Judgment (Doc. # 26), Plaintiff's Memorandum in Opposition Defendant's

Motion for Summary Judgment (Doc. # 33), and Defendant's Reply Memorandum in Support of

its Motion for Summary Judgment (Doc. # 37).  For the reasons that follow, the Court **GRANTS**

**IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment.

## I.  BACKGROUND

Defendant is engaged in the business of automobile window and windshield repair and

replacement.  Defendant operates two "call centers" in Columbus, Ohio; the Sawmill facility and

the Schrock facility, which operate 24 hours a day, 365 days per year, with varying shifts.

Plaintiff's Deposition[1] at 46-47.  The call centers are staffed by Customer Service Representatives ("CSR(s)") who handle incoming calls from customers, assisting them with placing damage claims, scheduling repairs and replacements, and assisting with sales of Defendant's products.  CSRs typically receive 95-120 calls per day.  (Doc. # 33, Ex. A, Tim George[2] Affidavit ("George Aff.") ¶ 4(c).)  CSRs answer calls for different insurance carriers and many of the carriers have their own pre-written "script" from which a CSR is required to read.  Pl. Dep. at 137-141.

On June 17, 2002, Plaintiff was hired to work as a CSR at the Sawmill facility, a position she held until her termination.  Pl. Dep. at 42-44, 46-47, 136-137; Pl. Dep. Ex. 8.  Plaintiff, like the other CSRs, had a job coach, a manager and a director.  During Plaintiff's employment, she had several job coaches, and during the last few months (approximately April through October, 2005), her job coach was Ben Ross.  Job Coach Ross reported to Lauren Meyer, Manager of Operations at the Sawmill facility, and Meyer reported to Shannon Slade, Director of Operations.[3]  Pl. Dep. at 103-107; Ross Dep. at 13-16, 20-21, 30-34, 59- 60, 73-74, 98-99, 101; Ross Dep. Exs. 6, 7; Slade Dep. p. 10.

Job coaches monitor CSR's calls and the CSR is scored on a "Daily Development Form,"

---

[1]References to the transcript of the deposition of Plaintiff Salama Madoffe, and to the exhibits appended thereto, are abbreviated as "Pl. Dep." and "Pl. Dep. Ex."  References to the transcripts of other depositions, and to the exhibits appended to them, are abbreviated as "(name of deponent) Dep." and "(name of deponent) Dep. Ex."  The deposition transcripts are filed at Doc. # 23 and # 25.

[2]Mr. George is Defendant's Quality Assurance Coordinator.  George Aff. ¶ 1.

[3]Prior to being assigned to Ben Ross, Plaintiff was on an "open team" for a period of time, meaning she did not have a direct coach.  As a result, she was not monitored at all, or may have been monitored by other job coaches or by Quality Assurance Department employees.  Ross Dep. at 102-103; Meyer Dep. at 41-42.

which is reviewed with the CSR, who has an opportunity to comment on it.  Monitoring and the

Daily Development Forms created are considered evaluations.  Defendant has a progressive

disciplinary policy to which CSRs are subject.  (Doc. # 33, Ex. D).  Pl. Dep. Exs. 13-19.  It states

that if an employee's monitoring score falls below eighty-five percent for any given week, that

the employee will be subject to discipline.  For repeated low scores CSRs may be terminated.

However, after six months, infractions related to improper script reading no longer remain

active.  Similarly, low monitoring scores are no longer considered active after three months.

Ross Dep. at 24-25; Pl. Dep. at 152-153; Pl. Dep. Exs. 32, 42, 44, 47-54; Meyer Dep. at 93-98;

George Dep. at 12-13, 52-54.

From the time of her hire until she informed Defendant of her pregnancy, Plaintiff

received the following disciplines:

September 28, 2002: call quality of 68%

October 14, 2002: unprofessional behavior on the telephone

February 5, 2003: failure to follow proper claims procedures

June 2, 2003: excessive time off of the telephone

July 28, 2003: call quality of 56%

July 28, 2003: failure to follow script and for being rude to customer

November 20, 2003: call quality of 76%

December 26, 2003: call quality of 75.4%

July 9, 2004: call quality of 62%

July 9, 2004: failure to follow proper claims procedures

September 22, 2004: failure to follow proper claims procedures

3

November 24, 2004: call quality of 84%

November 29, 2004: failure to follow proper claims procedures

January 26, 2005: failure to follow proper claims procedures

January 28, 2005: inappropriately releasing customer call

April 21, 2005: failure to log off telephone after leaving for the day

Pl. Dep. at 164-181, 184-201; Pl. Dep. Exs. 26-41.

Employees also receive annual evaluations. Plaintiff's 2004 Evaluation (covering June 2003-June 2004) and 2005 Evaluation (covering June 2004-June 2005) were completed by Manager Meyer. On a scale of poor, below expectations, meets expectations, exceeds expectations, and exceptional, Plaintiff was given an overall score as meeting expectations on both evaluations. (Doc. # 33, Exs. B and C).

The parties agree that Plaintiff informed Defendant that she was pregnant in June 2005. Although Plaintiff received a written discipline the following month, *i.e.*, on July 18, 2005 for 36% call quality, Plaintiff testified that she had no problems related to her pregnancy or her FMLA leave until September 2005. Pl. Dep. Ex. 42. Beginning in September 2005, Plaintiff testified Ross disciplined her for taking too many restroom breaks (which she claims were needed because of pregnancy complications), and that Ross began complaining about her work performance, asserting that she sounded bored on her calls because of her pregnancy. Pl. Dep. at 209, 218. Plaintiff claims that on one occasion, Ross apologized to a customer for Plaintiff's poor performance "because she is pregnant." *Id.* at 245-247. Plaintiff further avers that Ross assigned low scores on her call quality monitoring and that he repeatedly called her into the office and told her that if her pregnancy-related performance issues persisted that she would be

4

terminated.  *Id.* at 113-114, 118, 201-202.  Ross denies that he said or did any of these things.
Ross Dep. at 142-143, 154-155.

Both parties agree that Plaintiff received the following disciplines after informing
Defendant of her pregnancy:

September 7, 2005: using personal cell phone on call center floor

September 7, 2005: call quality of 38%

September 13, 2005: unscheduled time off telephones (while at the bathroom)

September 13, 2005: call quality of 67%

Pl. Dep. Exs. 43-47.

On September 19, 2005, Plaintiff submitted a schedule change request seeking to change
her work schedule to 8:30 a.m. to 3:30 p.m. daily from her regular schedule of 8:30 a.m. to 5:00
p.m. ("Plaintiff's first schedule reduction request").  Pl. Dep. Ex. 22.  Plaintiff indicated in
writing on the request form that she wanted the change in schedule because she was seven
months pregnant.  *See id.*  Plaintiff's request was denied.  Plaintiff spoke with Ross and Meyer
about the denial and each indicated to her that it was not within their power to grant or deny the
schedule request changes; instead, it was denied by the scheduling department.  Pl. Dep. at 82,
116-121, 125-134, 128-130; Pl. Dep. Ex. 22; Ross Dep. at 79-87, 141-142, 163-164; Ross Dep.
Ex. 1; Meyer Dep. at 48-49, 51, 54, 58-59.

After Plaintiff's first schedule reduction request was denied, Plaintiff received the
following disciplines:

September 14, 2005: call quality of 79%

September 16, 2005: call quality of 64%

5

September 21, 2005: Daily Development Form for call quality of 71%

Pl. Dep. Exs. 48-50.

On September 28, 2005, Plaintiff submitted an FMLA request for a reduction in hours based on alleged pregnancy complications.  Plaintiff contends that she had spoken with her physician who had suggested that she request FMLA leave.  Defendant granted the request the next day (September 29, 2005) and Plaintiff then began working reduced hours.  Pl. Dep. at 120-124, 131-134, 212- 213, 256; Pl. Dep. Exs. 23-25; Ross Dep. at 141-142 Meyer Dep. at 56-57, 59, 62-63.

Plaintiff received the following discipline for poor call quality after she requested and was granted FMLA leave:

October 5, 2005: Daily Development Form for call quality of 72%

October 6, 2005: Daily Development Form for call quality of 58%

October 11, 2005: Daily Development Form for call quality of 55%

October 12, 2005: Daily Development Form for call quality of 76%

Pl. Dep. Exs. 51-54.  Plaintiff believes that these disciplines were retaliatory and discriminatory.

Manager Meyer recommended to Director Slade that Plaintiff's employment be terminated because of her performance, and based on this recommendation Slade made the decision to terminate on Plaintiff October 12, 2005.  Ross Dep. at 146-150, 157; Meyer Dep. at 83-88, 90, 116-120, 124-128; Slade Dep. at 33-36, 38, 44-45, 59.  Plaintiff contends that the termination was in retaliation for her FMLA leave and was because of pregnancy discrimination.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must therefore grant a motion for summary judgment if the plaintiff, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party, and that party must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

## III.  ANALYSIS

In her Complaint, Plaintiff alleges both a retaliation claim as well as an interference claim under the FMLA and a pregnancy discrimination claim under the PDA.

## A.  Family Medical Leave Act

In 1993, Congress enacted the FMLA to provide job security and to help employees "balance the conflicting demands of work and personal life."  *Alston v. Sofa Express, Inc.*, Case No. 2:06-cv-0491, 2007 U.S. Dist. LEXIS 79719, at *7 (S.D. Ohio Oct. 19, 2007) (citing *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997) and 29 U.S.C. § 2601(b)).  Here, Plaintiff argues that she made three requests for FMLA qualified leave, *i.e.*, the additional bathroom breaks request, Plaintiff's first schedule reduction request, and Plaintiff's second schedule reduction request.

The United States Court of Appeals for the Sixth Circuit recognizes that subsections (a)(1) and (a)(2) of 29 U.S.C. § 2612 establish two distinct theories of recovery under the FMLA: those of entitlement (interference) and of retaliation.  *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).  *See also Collins v. United States Playing Card Co.*, 466 F. Supp.2d 954, 964 (S.D. Ohio 2006) (same).  Plaintiff alleges that Defendant's denial of her FMLA leave requests and her termination establish two discrete (interference and retaliation) FMLA violations.  A precondition to bringing either an interference or retaliation cause of action is the requirement that Plaintiff suffer from a serious health condition that renders her unable to perform her job.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) (citing 29 U.S.C. § 2612).  If Plaintiff fails to show that she suffered from a "serious health condition" that renders her unable to perform the function of a CSR, then her request for leave does not constitute FMLA qualifying leave.[4]  *See Lackey v. Jackson County, Tenn.*, 104 Fed.

---

[4]The Court notes that Plaintiff was not requesting FMLA leave to spend time with her new child; and, instead was asking for leave because of alleged complications of her pregnancy. (*See* Doc. # 33 at 4.)

8

Appx. 483, 487 (6th Cir. 2004) (noting that "FMLA protection extends only to 'serious health conditions' " and addressing what constitutes such conditions under the FMLA).

Whether an illness qualifies as a serious health condition under the FMLA is a legal question which this Court must determine. *Alston,* 2007 U.S. Dist. LEXIS at *20-21 (citing *Bond v. Abbott Labs.*, 7 F. Supp.2d 967, 974 (N.D. Ohio 1998), *aff'd*, 188 F.3d 506 (6th Cir. 1999)). Plaintiff may not avoid summary judgment on this issue by simply alleging her illness to be a serious health condition. *Fink v. Ohio Health Corp.*, 139 Fed. Appx. 667, 670 (6th Cir. 2005).

### 1. FMLA Qualifying Leave

The regulations issued by the United States Department of Labor provide:

(a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
> . . .
>
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>> . . .
>>
>> (ii) Any period of incapacity due to pregnancy, or for prenatal care.

29 C.F.R. § 825.114(a)(2)(ii). *See also Fink*, 139 Fed. Appx. at 670 (observing that the plaintiff must show that her condition qualifies as a serious health condition under the "continuing treatment by a health care provider" standard of 29 C.F.R. § 825.114(a)).

To qualify as a serious health condition, an employee must be incapacitated because of the pregnancy. *See Navarro v. Pfizer Corp.*, 261 F.3d 90, 95 (1st Cir. 2001) ("one way to demonstrate a serious health condition based on continuing treatment by a health care

professional is to show that the underlying condition involves a period of incapacity due to pregnancy or for prenatal care" citing 29 C.F.R. § 825.114(a)(2)(ii)); *Dormeyer v. Comerica Bank--Ill.*, Case No. 96 C 4805, 1997 U.S. Dist. LEXIS 10260, at *2 (N.D. Ill. July 15, 1997) ("pregnancy *per se* is not a serious health condition under the FMLA, absent allegations that the pregnancy has caused plaintiff to be incapacitated (*i.e.*, unable to perform the functions of the job")); *Gudenkauf v. Stauffer Commc'n, Inc.*, 922 F.Supp. 465, 475-476 (D. Kan. 1996) (pregnant employee's FMLA request for a reduced schedule prior to her due date, without medical support showing "her pregnancy and pregnancy-related conditions kept her from performing the functions of her job for more than one-half-day" was properly denied).

As to the incapacity requirement, Judge Graham recently explained:

> [Incapacitation for the purposes of the FMLA] does not mean that, in the employee's own judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the employee to have to work.  Rather, it means that a 'health care provider' has determined that, in his or her professional medical judgment, the employee cannot work (or could not have worked) because of the illness.  If it were otherwise, a note from a spouse, parent, or even one's own claim that one cannot work because of illness would suffice. Given the legislative history surrounding its enactment, the FMLA cannot be understood to establish such liberal standards for its application.

*Alston*, 2007 U.S. Dist. LEXIS at *20-21 (quoting *Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1166 (N.D. Ohio 1997) (internal citations omitted).  *See also* 29 U.S.C. § 2613(a) (employer may require that an employee's request for leave be supported by a certification from the employee's health care provider); 29 U.S.C. § 2613(b)(3) (the certification may request the health care provider to provide appropriate medical facts regarding the employee's serious health condition).

Plaintiff here offers no evidence that she was incapacitated or could not perform her job

duties prior to her second, and approved, FMLA request, on September 28, 2005.  It is uncontroverted that Plaintiff did not submit medical documentation supporting her request for additional bathroom breaks or her first schedule reduction request.[5]  Nor does Plaintiff currently allege that her pregnancy prevented her from working without the requested bathroom breaks or without the reduced work schedule.  Indeed, Plaintiff was not incapacitated from working her regularly scheduled hours which is proven by the fact that Plaintiff actually worked those hours when her request was denied.  Moreover, Plaintiff offers no evidence that the bathroom breaks were necessary because of a serious health condition, or that, even if they were, the she was incapacitated because of the serious health condition.  *See Mauder v. Metropolitan Transit Auth. of Harris Cty.*, 446 F.3d 574 (5th Cir. 2006) (denial of plaintiff's request for repeated bathroom breaks was proper because there is no evidence the breaks were part of a serious health condition, or that, even if it was a serious health condition, that the employee was incapacitated).

Consequently, the Court concludes that Plaintiff has failed to show that her pregnancy was a "serious health condition" that incapacitated her from performing the functions of her job

---

[5]The parties disagree as to whether Plaintiff gave sufficient notice to alert Defendant that she was seeking FMLA leave when she requested additional bathroom breaks and a reduced schedule.  Indeed, Plaintiff testified on deposition that the first request for a reduced schedule was not an FMLA request.  However, Plaintiff also testified that she was unaware of her rights under the FMLA at that time.  An employee seeking FMLA leave is obligated to give the employer notice sufficient to alert the employer the leave is FMLA-qualifying leave.  29 U.S.C. § 2612(e).  The regulations provide that the employee need not mention the FMLA by name, but is only required to give sufficient information to put the employer on notice that the leave may be FMLA-qualifying leave.  29 C.F.R. § 825.302(c).  If an employee's request is unclear, the employer is required to inquire further to obtain the necessary details of the leave to be taken in order to ascertain whether the requested leave qualifies as FMLA leave.  Consequently, the Court, for purposes of this Opinion and Order, accepts that Plaintiff provided sufficient notice to Defendant that she would like to take additional bathroom breaks and would like to have a shortened work day as FMLA leave.

at the time she requested additional bathroom breaks and the first schedule reduction request. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's FMLA claims related to the denial of her request for additional bathroom breaks and the denial of her first schedule reduction request.

### 2. FMLA Interference

Plaintiff alleges a claim of interference with FMLA rights. *See Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). To establish a *prima facie* case of interference under the FMLA here, Plaintiff must establish that (1) she was an eligible employee, (2) Defendant was an employer, (3) she was entitled to FMLA leave, (4) Defendant had notice of her intention to take leave, and (5) Defendant denied her FMLA benefits to which she was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005); *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

The parties only dispute the fifth element in this test, *i.e.*, Plaintiff contends that Defendant denied her FMLA benefits to which she was entitled when it denied her requests for additional bathroom breaks and the denial of her first schedule reduction request. However, as the Court explained above, the only FMLA qualifying leave request was the second schedule reduction request which was made on September 28, 2005 and was granted on September 29, 2005. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's FMLA interference cause of action.

### 3. FMLA Retaliation

Plaintiff contends that she has produced direct evidence and indirect evidence of retaliation in violation of the FMLA. *See Hoge*, 384 F.3d at 244 (identifying retaliation theory

arising from 29 U.S.C. § 2615(a)(2)).

### a. Direct evidence[6] of FMLA retaliation

Direct evidence in the FMLA context is evidence that, if believed, proves the existence of improper discriminatory animus without inference or presumption.  *Joostberns v. UPS, Inc.*, 166 Fed. Appx. 783, 791-792 (6th Cir. 2006).

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, Plaintiff evidence consists of Job Coach Ross's complaint that Plaintiff's pregnancy caused her to sound bored on the telephone, Ross's threats to terminate her based on Plaintiff's pregnancy-related poor job performance, and his apology to a customer for Plaintiff's poor performance "because she is pregnant."  This evidence utterly fails to constitute direct evidence of FMLA retaliation.  Indeed, Plaintiff fails to even allege that any comments were directed toward her request for or taking of FMLA leave, or were made by any individual with FMLA decision-making authority.

Consequently, to consider that Ross's alleged comments about Plaintiff's pregnancy were really directed toward her FMLA leave requests, the Court must draw inferences or presumptions, which prevent the allegations from constituting direct evidence of FMLA retaliation.  *See Joostberns*, 166 Fed. Appx. at 791-792.

Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment on Plaintiff's FMLA retaliation claim based on direct evidence.

---

[6]Plaintiff submits the testimony of Dawn Houston, a previous job coach for Defendant. Houston, however, was not involved in Plaintiff's discipline, evaluations or termination, and admitted that no one in management ever told her to monitor employees who took FMLA leave (Houston Dep. at 15-16, 23, 52-53, 55-60, 71-73).  The Court finds it unnecessary to rely on any of Houston's testimony.

### b. Indirect evidence of FMLA retaliation

To establish a claim of retaliation under the FMLA this court employs the familiar burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Skrjanc*, 272 F.3d at 313-16 (applying the *McDonnell Douglas* analysis to a retaliation claim under the FMLA). Under *McDonnell Douglas*, a plaintiff must first prove a *prima facie* case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the plaintiff's discharge. *Id.* at 802-04. If the defendant articulates such a reason, then the plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask retaliation. *Id.* at 804-06.

### i. Plaintiff has established a *prima facie* case under the FMLA.

To establish a prima *facie case* of FMLA retaliation, Plaintiff must establish that (1) she availed herself of a protected right under the FMLA by notifying his employer of his intent to take leave; (2) she was adversely affected by an employment decision; and (3) a causal connection exists between the two actions. *Skrjanc*, 272 F.3d at 314.

The parties dispute only the third element of the *prima facie* case. That is, whether there is a causal connection between the protected activity, *i.e.*, the second schedule reduction request which was made on September 28, 2005 and was granted on September 29, 2005, and her four October 2005 disciplines and/or her termination. With regard to the third element, the Sixth Circuit recently stated:

> We have previously held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection. *Skrjanc*, 272 F.3d at 314; *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 826 (6th Cir. 2002) (stating that, in the FMLA context, "[p]roximity in time can raise

14

a *prima facie* case of retaliatory discharge").

*Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding causal connection when termination occurred "three months after Bryson requested FMLA leave, and the very day that she was scheduled to return to work").

In this instance, Plaintiff was not only terminated nine days after the protected activity, but she also received four disciplines in October 2005 for call quality beginning three days after the protected activity. Plaintiff argues that these disciplines were designed to build a case for her termination which can be seen by the fact that she received four in October 2005 whereas she only received a total of five disciplines in 2004. Construing the evidence in a light most favorable to Plaintiff, the Court finds that a jury could reasonably infer a causal connection between Plaintiff's FMLA leave-taking and her four disciplines in October 2005 and her termination.

Accordingly, Plaintiff has established a *prima facie* case of FMLA retaliation.

### ii. Defendant has produced a legitimate non-retaliatory reason for its actions.

Defendant contends that Plaintiff was given the four disciplines at issue and was ultimately terminated because of poor work performance. This reason satisfies Defendant's burden to articulate a legitimate, non-retaliatory reason for its challenged actions. *See McDonnell Douglas*, 411 U.S. at 802-04.

### iii. Plaintiff has failed to establish that Defendant's reasons for disciplining and terminating her are pretext and the real reason is retaliation for taking FMLA leave.

It is Plaintiff's burden to establish that Defendant's proffered reasons for her October 2005 disciplines and termination are a pretext and the real reason for them is retaliation for

15

taking FMLA leave.  *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir.2003)

(burden of persuasion that defendant's asserted justification is pretextual ultimately rests with

the plaintiff.  A reason cannot be proved to be a pretext for retaliation unless it is shown both

that the reason was false, and that retaliation was the real reason.  *Virts v. Consol. Freightways

Corp. of Delaware*, 285 F.3d 508 (6th Cir. 2002) (quoting St. *Mary's Honor Ctr. v. Hicks*, 509

U.S. 502, 515 (1993)).  Plaintiff may meet this burden by showing that the reason offered by the

defendant for the challenged employment actions (1) has no basis in fact, (2) did not actually

motivate the actions, or (3) was insufficient to warrant the actions.  *Manzer v. Diamond

Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

Plaintiff offers no evidence that would tend to show that Defendant subjected her to the

adverse employment actions at issue here because she availed herself of FMLA leave.  This

leaves Plaintiff with nothing more than proximity in time between the date she took FMLA leave

and the adverse actions at issue.  "But such temporal proximity is insufficient in and of itself to

establish that the employer's non[-retaliatory] reason for discharging [her] was in fact

pretextual.[7]  *Skrjanc*, 272 F.3d at 317 ("We therefore conclude that [Plaintiff] has not met his

burden of raising a genuine issue of material fact as to whether [Defendant's] reason for

discharging him was pretextual.") (citations omitted).

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on

_____

[7]The Court notes that it found this temporal proximity sufficient to meet the fourth
element of the required FMLA retaliation claim *prima facie* showing.  However, unlike a
Plaintiff's burden in establishing pretext, "[a] plaintiff's burden in establishing a *prima facie* case
is not intended to be an onerous one."  *See Moll v. Tyco Healthcare*, Case No. 1:06-CV-00046,
2008 U.S. Dist. LEXIS 11231, at *18 (S.D. Ohio February 14, 2008) (quoting *Skrjanc*, 272 F.3d
at 315 and citing to *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir.2007): "The burden of proof
at the prima facie stage is minimal. . . .").

Plaintiff's FMLA retaliation claim.

**B.  The Pregnancy Discrimination Act**

The Pregnancy Discrimination Act states that discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions is defined as sex discrimination and is prohibited.  *See* 42 U.S.C. § 2000e(k).  The PDA further states that women who are "affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes."  *Id.*  As with all Title VII claims, a Plaintiff can establish the merits of her claim through direct and indirect evidence.  Plaintiff contends that she has produced both types of evidence.

**1.  Direct Evidence**

Direct evidence of discrimination is evidence that proves that discrimination has occurred without requiring further inferences.  *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (PDA case).  Here, Plaintiff alleges that the comments made by Job Coach Ross constitute direct evidence of pregnancy discrimination.  Specifically, Ross's complaint that Plaintiff's pregnancy caused her to sound bored on the telephone, Ross's threats to terminate her based on Plaintiff's pregnancy-related poor job performance, and his apology to a customer for Plaintiff's poor performance "because she is pregnant."

In opposition, Defendant first explains that it denies that Ross made these comments at all; however, it acknowledges that it must argue against the statements as if Ross admitted making them since this Court cannot make credibility determinations at this stage of the proceedings.  *See Curry v. Vanguard Ins. Co.*, 923 F.2d 484, 485 (6th Cir. 1991) (on a motion for summary judgment, "credibility determinations, the weighing of the evidence, and the

17

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  To that end, Defendant argues that Ross is not a supervisor and therefore his comments must be analyzed as those of a coworker and that the comments he made cannot constitute direct evidence of discrimination.

### a. Ross's supervisory capacity

The Sixth Circuit has "held that a supervisor is an individual who serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment."  *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir. 1994).  *See also Burlington Indus. v. Ellerth*, 524 U.S.  742, 765 (1998) (supervisor is one with immediate (or successively higher) authority).

Defendant argues that Ross is not a supervisor because he does not control an employee's work schedule, cannot approve or deny leave, cannot discharge employees, does not directly participate in the annual performance evaluations and must have his supervisor sign off on discipline.  Even if all of this were true, it does not prevent Ross from being considered Plaintiff's supervisor.

The relevant inquiry is not what Ross (or any other individual) could not do but rather what control he possessed.  Here, Ross testified on deposition that he could be considered Plaintiff's supervisor.  Further, Ross testified that he evaluated employees at least weekly.  He "monitored" (listened to employees on their incoming telephone calls and scored them on their performance) the employee's work performance as well as that of the team, which he headed. "Monitors" were considered evaluations.  He also coached employees and issued discipline.

18

Ross Dep. at 15, 24-24, 41-42, 53-54, 72-74. He also had the power to issue discipline as was shown when he "wrote up" Plaintiff for taking too many bathroom breaks. Pl. Dep. at 157-159.

Moreover, Director Slade, the official designated by Defendant as being the final decision maker on Plaintiff's termination, testified that she had taken no steps to independently verify the conclusions reached by Ross in the call monitoring and the corrective action reports. Slade Dep. at 64-66. Thus, she relied on his input as a substantial basis for terminating Plaintiff. Additionally, job coaches are required to monitor and score a CSR in categories including script adherence, and the subjective categories of voice quality, courtesy, and call flow. These monitors become part of the CSR's employment record and are used as the bases for disciplines and terminations. Certainly, a job coach exercises significant control over the conditions of a CSR's employment, including their potential termination from employment.

Accordingly, viewing all the evidence in the light most favorable to Plaintiff and making all reasonable inferences in her favor, the Court concludes that Ross was Plaintiff's supervisor.

### b. Job Coach Ross's remarks

Defendant contends that Ross's comments do not constitute direct evidence of discrimination because they were "isolated and ambiguous remarks that Plaintiff has taken completely out of context." (Doc. # 37 at 21 citing as examples *Sullivan v.Delphi Auto Sys. Corp.*, 198 F. Supp. 2d 952, 959 (S.D. Ohio 2002), *Phelps v. Yale Security, Inc.*, 986 F.2d 1020 (6th Cir. 1993), and *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir. 1989)). Contrarily, Plaintiff argues that the comments are neither isolated nor ambiguous in that they were made by her supervisor directly to her and concerned her ability to perform her job adequately *because of* her pregnancy. This Court agrees.

19

Plaintiff also contends that the comments also evidence stereotyping about pregnancy which can constitute direct evidence as is shown in cases from our sister circuit.  *See Laxton v.Gap, Inc.*, 333 F.3d 572 (5th Cir. 2003) (adverse assumptions about pregnancy are direct evidence); *Maldonado v. U.S. Bank*, 186 F.3d 759, 767 (7th Cir. 1999) (discriminatory animus can be inferred from supervisor's willingness to assume the worst, i.e., unjustified presumption that the employee's pregnancy will render her unable to fulfill her job expectations); *Troy v. Bay State Computer Group, Inc.*, 141 F.3d 378, 381 (1st Cir. 1998) (affirming jury verdict in favor of terminated pregnant employee where employer might have acted on unlawful, stereotypical speculation that pregnant women are poor attendees); *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 437 (8th Cir. 1998) (affirming jury verdict in favor of terminated pregnant employee where employer may have "discriminatorily assumed [the plaintiff] was suffering a condition that would interfere with her job").

Defendant opposes Plaintiff's argument regarding stereotyping contending that "Plaintiff is missing one crucial element before the Court can allow the inference that Ross's actions were infected by stereotype – evidence of an existing stereotype about pregnant women and telephone conversations."  (Doc. # 37 at 21, fn. 14) (citing *Conley v. U.S. Bank Nat'l Assoc.*, 2005 U.S. Dist. LEXIS 22370, *12 (S.D. Ohio Oct. 4, 2005) which rejected stereotype argument because "observations by supervisor that plaintiff "lacked initiative" was "not setting the world on fire," and was not a "go getter" have no demonstrable relationship to plaintiff's age).  Defendant's argument is not well taken.   Indeed, *Conley* is simply inapposite.  That is, in *Conley* the supervisor's comments could have been directed to anyone who lacked initiative which is unlike this instance, where Ross specifically tied the comments of Plaintiff's job performance problems

20

to her pregnancy.

The Sixth Circuit recently noted "that there exists some tension in the law in this circuit" related to whether comments such as those at issue here constitute direct evidence of discrimination. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 525 (6th Cir. 2007). The *Blair* court reviewed the law that presented the conflict and concluded:

> We need not resolve this conundrum here. As shown below, even if we apply the circumstantial-evidence test, it is clear that [Defendant employer] was not entitled to summary judgment.

*Id.* at 526 (reviewing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544 (6th Cir. 2004); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241 (6th Cir. 1995), and *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004)). In the instant action, this Court is faced with analogous circumstances as was the *Blair* court, and, like the *Blair* court, this Court declines to resolve the problem here because it is clear that Defendant is not entitled to summary judgment under the circumstantial evidence test applied below.

### 2. Indirect Evidence

Like the FMLA retaliation claim above, the familiar *McDonnell Douglas* paradigm is applied in pregnancy discrimination cases based upon circumstantial evidence. *Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996).

### a. Plaintiff has established a *prima facie* case of under the PDA

To establish a *prima facie* case of pregnancy discrimination through indirect evidence, a plaintiff "has the burden of presenting evidence from which a reasonable jury could conclude that: (1) she was pregnant; (2) she was qualified to perform her job; (3) she was subjected to an adverse employment decision; and (4) there was a nexus between her pregnancy and the adverse

21

employment decision." *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008) (quoting *Tysinger v. Police Dep't of the City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006)).

The parties only dispute the fourth element of the *prima facie* showing.  Plaintiff argues that the timing between her announcement that she was pregnant and her disciplines and termination supports the conclusion that there was a nexus sufficient to establish the fourth element of the *prima facie* showing.  Indeed, Plaintiff's argument here is certainly more compelling than was her argument in support of establishment of a causal connection between her FMLA leave and her disciplines and termination.  This is because after Plaintiff informed Defendant that she was pregnant (in June 2005) Plaintiff received eleven (11) disciplines, approximately forty percent of her total discipline during her tenure with defendant. Plaintiff argues that these disciplines were designed to build a case for her termination.

Moreover, under the PDA analysis, unlike the FMLA analysis, the comments made by Ross are relevant because they were directed toward Plaintiff's pregnancy.  Construing the evidence in a light most favorable to Plaintiff, the Court finds that a jury could reasonably infer a nexus between Plaintiff's pregnancy and her disciplines and termination.

Accordingly, Plaintiff has established a *prima facie* case of pregnancy discrimination.

### b.  Defendant has produced a legitimate non-retaliatory reason for its actions.

Defendant contends that Plaintiff was given the disciplines at issue and was ultimately terminated because of poor work performance.  This reason satisfies Defendant's burden to articulate a legitimate, non-retaliatory reason for its challenged actions.  *See McDonnell Douglas*, 411 U.S. at 802-04.

### c.  Plaintiff has raised a material issue of fact as to whether Defendant's

22

**reasons for the adverse actions are pretext for discrimination.**

As a result of the foregoing, it is Plaintiff's burden to demonstrate that Defendant's asserted justification for her eleven September and October 2005 disciplines and her termination is a mere pretext for pregnancy discrimination. *See McDonnell Douglas*, 411 U.S. at 804-06. As set forth in the FMLA pretext section *supra*, a plaintiff may establish that an employer's proffered reason was a mere pretext by showing that the stated reason had no basis in fact, that the stated reason was not the actual reason, or that the stated reason was insufficient to explain the defendant's action. *See Manzer*, 29 F.3d at 1084.

In this analysis, unlike that under the FMLA, Plaintiff is not left with only temporal proximity between announcing her pregnancy and the numerous disciplines and ultimate termination. Indeed, the evidence here shows that the individual (Ross) who allegedly made the statements about Plaintiff's pregnancy and its effect on Plaintiff's work ability is the same individual who monitored her calls. It was these call monitors which formed the basis of her disciplines and her ultimate termination. *See* Slade Dep. at 64-66 (testifying that she relied upon the call monitoring and the corrective action reports in her decision to terminate Plaintiff). The parties dispute the influence Ross had on Plaintiff's disciplines and her termination. This factual dispute is material and prevents this Court from granting summary judgment in this case.

The Court concludes that Plaintiff has raised a genuine issue of material fact as to whether Defendant's reasons for her disciplines and termination were a pretext and pregnancy discrimination was the real reason. *See Muncie*, 328 F.3d at 873. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment on Plaintiff's claim under the PDA.

## III.  CONCLUSION

Based on the foregoing, the Court **DENIES IN PART AND GRANTS IN PART** Defendant's Motion for Summary Judgment.  (Doc. # 26).  Specifically, the Court **DENIES** Defendant's Motion as it relates to Plaintiff's claim under the Pregnancy Discrimination Act and **GRANTS** Defendant's Motion as it relates to Plaintiff's claims under the Family Medical Leave Act.

**IT IS SO ORDERED.**

**/s/   Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**